## CHARLES HARBACH v. AUGUST KURTH.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued November 5, 1889—Decided January 6, 1890.
[To be reported.]

1. The purpose of the mechanics' lien docket, required to be kept by § 3, act of June 16, 1836, P. L. 696, is to give notice to purchasers and incumbrancers, and by the description therein of the property against which the claim is filed they are affected with notice of the extent of the lien claimed.

2. When a claim for labor and materials for a building erected upon one of two adjoining lots of ground, is filed as a lien against both, it is in the power of the owner or of any lien creditor to have the curtilage judicially determined by proceedings under the provisions of §§ 5–9 of the said act.

3. But, when there is a sale of both lots under the mechanics' lien, without any previous determination of the curtilage, the lien of a subsequent mortgage is discharged, and the mortgagee cannot allege that any portion of the ground embraced in the claim was unnecessary for the proper and useful purposes of the building.

Statement of Facts.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-IAMS, McCOLLUM and MITCHELL, JJ.

No. 197 October Term 1889, Sup. Ct.; court below, No. 147 April Term 1888, C. P. No. 2.

On February 6, 1888, a scire facias sur mortgage was issued by Charles Harbach, now for use of Jacob Harbach, against August Kurth, with notice to Louis Kremientate, Charles Kremientate and Charles Baer. Issue.

At the trial on April 9, 1889, the plaintiff put in evidence a mortgage upon lots 1 and 2, in Shaler's Plan on Coal Hill, executed by August Kurth to Charles Harbach, for $2,500, dated October 1, 1875, recorded November 17, 1875, payable in one year, reciting that it was to secure unpaid purchase money; with an assignment thereof to Jacob Harbach dated November 24, 1875, entered on the margin of the mortgage as recorded. The plaintiff then rested.

The defendant offered in evidence a mechanics' lien filed by Frederick Raab, on September 6, 1875, to No. 20 October Term 1875, for $537.62, against "a two-story frame house containing eight rooms and erected upon two lots or pieces of ground situated in the Thirty-fifth ward, city of Pittsburgh, Allegheny county, Pa., bounded and described as follows: Lots numbered 1 and 2 in block two in Clarence Shaler's plan of lots on Coal Hill in Union borough, bounded as follows: Beginning on the south side of Sherman street at its intersection with another street, forty feet wide; thence southwardly along Sherman street one hundred and twenty feet and four inches to lot No. 3; thence by the same, one hundred and seventy feet and six and three fourths inches to Well street; thence by said street seventy-three feet and nine inches to a forty foot street; thence by the same, north-westwardly one hundred and ninety-five feet and seven inches to the place of beginning:" also a scire facias upon said lien to No. 2 January Term 1876, and judgment thereon on November 4, 1875, for $548.37; also a levari facias upon said judgment and a sale thereon of the property covered by the lien, on January 3, 1876, to G. L. Fisher, for $1,025, and sheriff's deed to said Fisher for said lots 1 and 2, in Shaler's Plan, acknowledged January 29, 1876.

The foregoing offer was objected to by the plaintiff for the

following reasons: 1. Because the record does not show that any boundaries were defined or any curtilage set apart as necessary for the ordinary and useful purposes of the building, as required by the act of assembly under which the lien was filed. 2. Because the lien never extended to any more land than was necessary for the ordinary and useful purposes of such building, and did not extend to the amount of ground, described in the lien, upon which the building is alleged to be situated; and therefore did not extend to lot No. 2, or to any more ground than was necessary for the ordinary and useful purposes of the building. 3. The offer is incompetent and irrelevant.

By the court: The second objection shows that your first one is too strong, but it is competent. Objections overruled; exception.[1]

After other testimony showing the appropriation of the proceeds of the sale of the property to prior liens, the defendant rested.

The plaintiff in rebuttal, under objection and exception to the defendant, put in evidence the record of the mechanics' lien, scire facias and levari facias above mentioned, for the purpose of showing simply that the curtilage of the building against which the lien was filed was not set apart, nor the boundaries thereof defined, as provided by the act of assembly under which the lien was filed. Calling Jacob Harbach, the plaintiff then offered to prove by the witness on the stand and others: 1. That the building against which the lien was filed is a two-story frame house, and was situate in the corner of lot No. 1, fronting on Sherman street and the forty foot street mentioned in the description in the mechanics' lien, now known as Grant street; that said building was twenty-four feet front on Sherman street, and about thirty-four feet deep, running along said forty foot street; that said building is built out even with or close up to Sherman street and said forty foot street, no ground intervening between said house and said streets; that the western corner or side of said house is fifty-six feet from the western line of lot No. 1, and fifty-six feet from the eastern line of lot No. 2, and that at the time of filing said lien there were fifty-six feet of vacant and unoccupied ground between the western side of said house and the western line of lot No. 1; that no portion of said house stood on lot No. 2, nor did it stand

within fifty-six feet of it. 2. That the whole of the two lots, fronting together one hundred and twenty feet on Sherman street, was not necessary for the ordinary and useful purposes of the building against which the lien was filed. 3. That no portion of the lot No. 2, mentioned in the lien was necessary for the ordinary and useful purposes of said building. 4. That the plaintiff had no notice or knowledge of said scire facias or sale on said levari facias.

Counsel for defendant object to plaintiff's offer, because: 1. The judgment or lien of Frederick Raab was entered against Charles Harbach while still owner, and reduced to judgment prior to the assignment of Charles to Fred. Harbach, who has constructive notice thereof, and, being in privity, is concluded thereby. 2. The act of assembly provides a method of procedure by which the rights of lien creditors may be adjusted as between themselves, and that remedy is exclusive. 3. The sheriff's sale was based upon a judgment regularly entered and . valid upon its face, and operated to transfer the title to G. L. Fisher discharged of the lien of the mortgage in suit. 4. The offers are all incompetent and irrelevant.

By the court: Objection sustained; exception.[2]

At the close of the testimony the court, Ewing, P. J., charged the jury that the lien of the plaintiff's mortgage had been divested by the sheriff's sale upon the mechanics' lien which existed when the mortgage was executed, and that their verdict should be for the defendant.[3]

The jury returned a verdict for the defendant, as directed; and judgment having been entered on the verdict, the plaintiff took this appeal, assigning for error :

1. The admission of defendant's offer.[1]
2. The refusal of the plaintiff's offer.[2]
3. The direction to find for the defendant.[3]

*Mr. William A. Stone*, for the appellant :
1. We submit: (*a*) That the lien given the mechanic can extend no farther than is expressly provided, by the statute, and that the sheriff can sell no more than what was bound by the original lien ; (*b*) that the lien in this case never extended any farther than to so much ground adjacent to the building

erected as was necessary for its ordinary and useful purposes; and (*c*) that the statute is mandatory as to the defining the ground adjacent and necessary to such building, declaring that the quantity and boundaries thereof shall be determined: Sections 1–9, 21, act of June 16, 1836, P. L. 696. Clearly this statute does not contemplate a sale at all on a levari facias upon a mechanics' lien, until the boundaries of the curtilage are defined.

2. It is claimed that the plaintiff is equally at fault, because he might have applied to court to have the curtilage defined. It is not a question of whose fault it was, however, but a question of lien. We claim that there never was any lien on that portion of the ground described, which was unnecessary for the useful purposes of the building; that a claimant selling without having the curtilage determined, sells only what the lien has attached to definitely, to wit, in this instance, the building and the ground covered by the building. The description of the land is no part of the lien. The lien upon the land is but incidental to the lien upon the house erected, and if the house is destroyed by fire or flood, the lien upon the land fails: Wigton's App., 28 Pa. 161. It no doubt contributes much to facility and economy in conducting lien proceedings, that the lien should be accurately described in the claim filed, but it is not essential: Nelson v. Campbell, 28 Pa. 169; Pretz's App., 35 Pa. 349.

*Mr. W. L. Bird* (with him *Mr. West McMurray*), for the appellee:

1. The third section of the act of June 16, 1836, makes the mechanics' lien docket an official record, and all claims filed therein in time, and in proper form, give notice to all persons of the extent of the lien, and when so filed, incumbrancers and purchasers are affected with notice. "The purpose of the docket is to give notice to purchasers and creditors, and there they must look:" STRONG, J., in Armstrong v. Hallowell, 35 Pa. 487. The recording of this mechanics' lien was constructive notice to the plaintiff, and he is thereby concluded.

2. It is admitted that, as a lien creditor, the plaintiff by invoking the power of the act of assembly, could have come into court, even after execution issued on the lien, and have had

any right he might have been entitled to established; but, after a sale of the property for a judgment regular and valid on its face, and a transfer of it by a purchaser at such sale to another party, and then a sale of one of these lots by such second purchaser to a third party, the plaintiff is concluded: Shryock v. Buckman, 121 Pa. 259.

OPINION, MR. CHIEF JUSTICE PAXSON:

The third specification of error includes all of the others. It is that the court erred in charging the jury "that the lien of plaintiff's mortgage was divested by the judicial sale in evidence, and that the verdict should be for the defendants."

The lien of plaintiff's mortgage was subsequent in point of time to the mechanics' lien under which the mortgaged premises had been sold. It follows, necessarily, that, if the mechanics' claim was a valid lien, a sale of the premises covered thereby, under a judgment obtained in the scire facias upon said lien, would discharge the subsequent mortgage. The plaintiff contends, however, and offered to prove on the trial below, that the claim in question was filed against two lots of ground, while the building was erected on one only of said lots, and that the other lot was wholly unnecessary for the ordinary and useful purpose of said building. This offer the court rejected, and it forms the subject of the second specification of error.

The claim filed describes the building as " erected upon two lots or pieces of ground," the whole being described by metes and bounds as though they formed one lot. The plaintiff's contention was that the second lot was not required for the ordinary and useful purposes of the building erected on the other lot; that the lien was void as to both lots, and the sheriff's sale passed no title. We cannot assent to this proposition. Conceding that the claim covered more ground than was essential to the proper enjoyment of the building, we cannot say that the lien was void. It is true, the lien creditor did not have the curtilage defined, as provided for in the act of assembly. He filed his claim against what he conceived to be the proper amount of ground. If he filed it against too much, the owner, mortgagee, or any other lien creditor had the right, under the fifth section of the mechanics' lien law of June 16, 1836, to apply, by petition in writing, to the proper court to

appoint competent and skilful persons as commissioners to designate the boundaries of the lot. And the eighth section of said act provides that if execution shall be awarded for the levy and sale of any lot or piece of ground upon which a building shall be erected, before the boundaries of the lot or curtilage which ought to be appurtenant thereto shall be designated, it shall be lawful for the court, upon application, to stay such execution until such designation shall be made, and thereupon the sale to proceed, etc.; while the ninth section of said act further provides that if the building against which any claim shall be filed as aforesaid, or any part of the ground adjacent thereto, shall be sold by virtue of an execution upon any mortgage or judgment, before the extent of the lien of the claimant shall be ascertained as aforesaid, the court out of which such execution shall have issued shall have power to determine the rights of the respective parties, and the apportionment of all liens as aforesaid, and for that purpose may appoint an auditor, and direct an issue to try disputed facts. We have here ample provisions for the protection of the owner and the lien creditor. If either is dissatisfied with the claim as filed, he can have the curtilage fixed at any time thereafter, pending an execution, or after a sale of the premises by virtue of an execution upon any mortgage or judgment.

This claim was filed prior to the entry of the plaintiff's mortgage. He had therefore record notice thereof. The third section of the act of June 16, 1836, respecting mechanics' liens, provides for a mechanics' lien docket, and makes it the duty of the prothonotary to " record and enter therein all descriptions or designations of lots upon which claims are filed, and to cause the names of the claimants, owners and contractors to be alphabetically indexed therein." The purpose of this docket is to give notice to purchasers and creditors, and here they must look: Armstrong v. Hallowell, 35 Pa. 485. The plaintiff therefore knew, or is chargeable with knowledge that the lien covered both lots. He had then the right to apply to the court, and have the curtilage fixed, if he thought the claim covered more ground than was useful or necessary for the proper enjoyment of the building. He did not do so; and twelve or more years after the premises had been sold under the mechanics' lien, and had passed into the hands of an innocent purchaser,

he issued his scire facias upon his mortgage, for the purpose of selling both lots. This he cannot do. The lien of his mortgage was discharged by the prior judicial sale. The purchaser at that sale was protected by the judgment on the mechanics' claim. He was not bound to look any further. This is abundantly shown by the recent case of Shryock v. Buckman, 121 Pa. 248.

We cannot assent to the proposition that this claim was void upon its face because it appeared that it embraced a larger curtilage than was necessary. If we were to lay down such a rule as this, we would unsettle titles without number. The practice has been in many parts of the state for the lien creditor to include with his claim so much ground as he regarded as necessary for the enjoyment of the building. If he included too much, the owner or a lien creditor could have the curtilage fixed by proceedings under the act of assembly. In a large majority of cases the owner has acquiesced in the curtilage as defined in the claim, and in many instances the property has been sold by the sheriff as described. If we regarded the practice as erroneous, we could not at this late day declare all such liens void, and the title worthless acquired under them.

Judgment affirmed.