Sicardi et al. *v.* Keystone Oil Company et al. Imperial Refining Co.'s (Ltd.) Appeal.

*Mechanics' liens—Curtilage—Judgment—Auditor.*

Where judgment has been obtained on a sci. fa. issued on a mechanics' claim which contains a description of the lot on which the building is erected, and the property is then sold by a receiver under order of court and an auditor is appointed to distribute the money, such auditor has no power, at the instance of a mortgage creditor, to define the curtilage of the mechanic's lien so as to include only a part of the property.

Before judgment, a mechanic's lien claim is open to impeachment by all having an interest in its validity as owner, purchaser or lien creditor; but afterwards it is subject to the well settled rule that a judgment cannot be impeached collaterally by third persons, although they are lien creditors of the defendant, except for fraud or collusion: Lauman's Ap., 8 Pa. 473.

Whether § 9 of the act of June 16, 1836, providing that in case of a sale by execution before the extent of the mechanic's lien shall be ascertained as provided in said act, the court out of which the execution issued shall have power to determine the rights of parties and the apportionment or appropriation of all liens, and may appoint an auditor for that purpose or upon application direct an issue for the determination of disputed facts —whether this section applies to a case in which the claimant has designated the curtilage with the knowledge and acquiescence of the owner and lien creditors, not decided.

Whilst a sale by a receiver under an order of court is not within the letter, it is clearly within the spirit of § 9 of the act of June 16, 1836: Per McCollum, J.

Paraffine works may properly be included in and construed to be part of a manufacturing plant known and operated as an oil refinery; and in such a case, a mechanic's lien claim, filed against the whole plant and the inclosed ground on which the buildings were erected and which was necessary for its operations, is in proper form: Per McCollum, J.

Prima facie, the liens of mechanics cover the whole of the ground described in the claims; and in case the owner or lien creditors consider that there is too much land included in the claim, their remedy is under the act of June 16, 1836: Per McCollum, J.

Argued Oct. 7, 1891. Appeal, No. 260, Oct. T., 1891, by Imperial Refining Co., Ltd., a creditor, from decree of C. P. Venango Co., Nov. T., 1887, No. 4, confirming auditor's report and distributing funds in the hands of the receiver of the Keystone Oil Co. Before Paxson, C. J., Sterrett, Green, Williams, McCollum and Mitchell, JJ.

Claim by bondholder to limit the funds applicable to mechanics' liens.

In 1887, Robt. G. Lamberton was appointed the receiver of the Keystone Oil Company. On April 13, 1888, he was authorized to sell the real estate of the company ; and on June 14, 1888, filed a report of sale. In January, 1890, his account was filed; and on April 8, 1890, C. A. Myers was appointed auditor " to consider and report upon exceptions to account of the receiver, R. G. Lamberton, and distribute money in his hands."

Before the auditor, among other claims presented, were those of certain mechanics' lien creditors filed in 1887 and 1888, and on which judgments had been obtained : See Titusville Iron Works v. Keystone Oil Co., 130 Pa. 211.

The claims filed by the mechanics stated that they were "for labor and materials furnished by them for and about the erection and construction of the several buildings and structures constituting a certain oil refinery upon the premises hereinafter described, and against the buildings, structures and the ground covered thereby, and so much other ground immediately adjacent thereto and belonging to the said Keystone Oil Company as may be necessary for the ordinary and useful purposes of the same." The claims further stated that " The several structures composing said oil refinery are located upon a certain piece or part of land . . . . situate," etc., describing the whole tract in question.

The report of the auditor was in part as follows :

" Lien creditors under the mortgage to secure bondholders claimed that the mechanics' liens should be confined to the illuminating oil department and its proper curtilage, and testimony was introduced on both sides to show what was a proper and necessary curtilage and the value of this portion of the works. The issue thus raised, after judgment on the claims and sale of land by the receiver, is not properly before the auditor.

" 1st. Sections 5–9 of the act of June 13, 1836, Purdon, pages 1158, 1159, provide a method whereby the owner of the land or a lien creditor may obtain an apportionment of mechanics' liens. The directions of the statute must be strictly pursued: Act of March 21, 1806, Purdon, page 74. They have not attempted to follow the requirements of the statute in a single particular, either by petitioning for appointment of commissioners to make apportionment, by asking for the appointment of an audit-

or to inquire into and report the facts, or by asking for an issue for the determination of disputed facts. Neither did they present a request to the auditor for an issue under rule of court No. 59, or apply to the court for an extension of the auditor's powers—the powers granted him being merely " to consider and report upon exceptions to account of the receiver, R. G. Lamberton, and distribute money in his hands." They cannot complain of lack of time or want of opportunities of having apportionment made. Their mortgage was recorded October 13, 1887. The receiver was appointed November 8, 1887. The mechanics' liens were filed between September 30, 1887, and March 26, 1888. Judgment was not entered on any of them until after November 11, 1889. The Keystone case in all its branches was before the court time and time again. The auditor was appointed April 8, 1890, and commenced to take testimony on the second branch of the audit—the distribution of money—on December 15, 1890, and the mortgage bondholders did not introduce or offer to introduce testimony on apportionment until after the auditor had given notice that testimony would close.

" 2d. In Titusville Iron Works v. Keystone Oil Co., 130 Pa. 211, the description used in the lien is held to be sufficient and judgment was entered on the claim. This judgment cannot be impeached collaterally by third persons, though lien creditors of defendant, except for fraud or collusion : Lauman's Appeal, 8 Pa. 477. The description in the lien embraced all the land sold by the receiver and prima facie, after judgment was entered, the legal inference is that it was all necessary for the ordinary and useful purposes of the " building "—more especially in this case as the land was sold under same description used in the lien : See Harbach v. Kurth, 131 Pa. 177, sections 2, 3–21 of act 1836, and Armstrong et al. v. Hallowell, 35 Pa. 485. This legal inference can only be overcome by proper proceedings under sections 5–9 of the act of 1836, supra, and has not been done. The judgment itself would probably be conclusive and prevent any action under sections 5–9, supra.

" It is hardly necessary to discuss the other claim made— that if under the evidence any articles were furnished both the illuminating oil and paraffine departments by the same party, the claim was against ' two buildings,' and the claimant having

failed to apportion his claim was postponed as to other lien creditors as to both parts. The claimant did not file his claim against 'two or more buildings owned by the same person,' designating them in the claim filed as two buildings, but filed it against ' one building '—' an oil refinery.' Even if this ' oil refinery ' was in fact composed of two or more buildings, the mechanics' liens are not postponed for reasons above.

" Although the distribution is made under a case in equity, it is not to be presumed on that account that creditors under mechanics' lien laws are to be stripped of any rights they may have under those laws, or other creditors given privileges against them to which they are not entitled under the same laws. It is very questionable whether, under the mechanics' lien laws, general creditors have any right to question the lien or extent of land bound by it, except for fraud or collusion, however that may be ; in this case mortgage and general creditors have stood by for over three years without doing anything to prevent acquirement of rights by mechanic lien creditors to which, as against other creditors, they were not equitably entitled, but which it is now too late to question.

"The money to be distributed was not made by an ' execution ' mentioned in section 9, act of 1836, supra, but by an order of sale, made by the court of common pleas and directed to the receiver. This order of sale is certainly as high in rank as an ' execution,' and is treated as equivalent thereto. If it cannot be so considered, then claimants, as against the mechanics' liens, would have been confined to sections 5, 6 and 7, act 1836, in obtaining apportionment."

Exceptions filed to the report of the auditor alleged error in his findings of fact; 4, in not finding that the paraffine works and oil refinery were distinct and independent plants ; 5, in finding that the whole plant as run by the company constituted an oil refinery, having separate and distinct departments for different processes of refining ; 7, in failing to find that the several buildings constituting the oil refinery and described in the statements for liens filed were all located on a certain part of the real estate ; and error in his conclusions of law ; 2, in holding that the defining of the curtilage of the oil refinery was not within his powers ; 3, in refusing to divide the fund derived from the sale of real estate into parts and to distribute

to mechanics' lien creditors only one part thereof; 4, in holding that the entry of judgment on the mechanics' liens operated as a bar to the ascertainment of the curtilage in this proceeding; 5, in not postponing to other lien creditors the claims of mechanics filed against the oil refinery and paraffine works without apportionment; 6, in holding that the mortgage bondholders were too late to question the rights claimed by the mechanics' lien creditors.

The court below, by TAYLOR, P. J., dismissed the exceptions and confirmed the report of the auditor.

*Errors assigned* were (1–8) the dismissal of the exceptions as above, quoting them; (9) confirming auditor's report and awarding the proceeds of the whole of the real estate to the payment in full of the mechanics' lien creditors.

*C. Heydrick* and *H. D. Hancock*, with them *Carl I. Heydrick*, for appellants.—It is only where the different structures are constituent parts of a whole and incapable of separation without injury, that a lien may extend over all: Lauman's Ap., 8 Pa. 473 ; Diller v. Burger, 68 Pa. 432 ; Parrish & Hazard's Ap., 83 Pa. 111 ; Girard Point Storage Co. v. Southwark Foundry Co., 105 Pa. 248.

*Roger Sherman*, with him *William McNair, J. L. Dorworth, W. J. Breen, T. F. Ritchey, Ash & Speer, F. W. Hays, J. B. McAllister, J. S. Carmichael, R. W. Dunn* and *Samuel Grumbine*, for appellees, cited Linden Steel Co. v. Imp. Ref. Co., 138 Pa. 10 ; Short v. Ames, 121 Pa. 530 ; Keppel v. Jackson, 3 W. & S. 322 ; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627, and 130 Pa. 211 ; Lauman's Ap., 8 Pa. 473–477 ; Armstrong v. Hallowell, 35 Pa. 435 ; Harbach v. Kurth, 131 Pa. 177.

OPINION BY MR. JUSTICE McCOLLUM, May 9, 1892 :

The question raised on this appeal relates to the distribution of the proceeds of a sale by the receiver of the property of the Keystone Oil Co., described in the claims of the mechanics and material-men. These claims, with interest and costs, amounted to the sum of $38,625.02, were within the purview of the mechanics' lien laws, sufficient in form and substance, and filed in time, and in conformity with the procedure provided for their enforcement, judgments were recovered upon them. They

were for labor done and materials furnished "for and about the erection and construction of several buildings and structures, constituting an oil refinery," located on a lot of 55 acres, the boundaries of which were particularly defined. The receiver sold the property by the description contained in the claims for the sum of $40,000. The Imperial Refining Co., Limited, appellant, is the owner of two bonds of $1,000 each, secured by a mortgage on this property of $75,000, executed by the Keystone Oil Co. on Oct. 12, 1887, and the lien of which on the oil refinery, it is admitted, is subsequent to the liens of the mechanics and material-men. The appellant received these bonds in part satisfaction of its demands against the Keystone Oil Co., four days after the bill for the dissolution of the debtor company was filed, and ten days before the receiver of its effects was appointed.

It is now contended by the appellant that the liens of the mechanics and material-men did not extend to and embrace all the land described in them, nor all the structures located thereon, although such structures were necessary for the proper prosecution of the business in which the Keystone Oil Co. was engaged, but that such liens were limited to the buildings and curtilage necessary for one branch of that business ; and, further, that the property covered by the liens so limited did not exceed in value the remainder of the property contained in the description. The Keystone Oil Co. was a corporation formed for the purpose, inter alia, "of refining and manufacturing petroleum and other oils into their various products," and of compounding "petroleum and other oils and their products with other necessary and desirable substances." The 55 acre lot, and the buildings, machinery and appliances erected thereon, were devoted exclusively to the business for which the company was created, and it is not denied that they were required for it. It may be true that this business was susceptible of division and that there was no apparent imperious necessity for concentrating all of it on the lot in question. But the extent of its business, and the manner of conducting it, were matters to be determined by the company, with a view to its own convenience and profit. If, in fact, these structures constituted a manufacturing plant, owned and managed by the Keystone Oil Co., as a whole, and the inclosed ground on which they were

erected was necessary for its operations, the contention of the appellant is without merit or anything tangible to rest upon. The capacity of the plant to do all the work required in refining and manufacturing petroleum and other oils into their various products, and in compounding the same with other necessary and desirable substances, does not in any respect militate against this conclusion.   In other words, the plant may embrace the manufacture of paraffine and of other products of oil, without making the structures specially adapted to one branch of its work a distinct subject of lien.   It is not intended by this to deny that the manufacture of paraffine may constitute a separate and independent industry, or that parties may establish and operate manufactories exclusively for its production, but to make clear, and enforce the proposition, that paraffine works may properly be included in and constitute part of a manufacturing plant known and operated as an oil refinery.   Prima facie the liens of the mechanics and material-men were valid, and co-extensive with the boundaries of the property described in them. But these boundaries did not conclusively ascertain the curtilage, and if they included land not necessary for the work of the plant, or structures which were not a part of it, there was an easy and ample remedy provided for the owner and lien creditors by the act of June 16, 1836.   By its provisions the owner may define the curtilage before the commencement of the building, and, in default thereof, the court of the proper county may, on the application of the owner or lien creditors, appoint commissioners to designate it, and stay any execution awarded for the levy and sale of the property until such designation is made.   If the property is sold by virtue of an execution upon any mortgage or judgment before the extent of the mechanics' lien is ascertained, the court has " power to determine the rights of the respective parties, and the apportionment or appropriation of all liens as aforesaid, and for that purpose may appoint an auditor to inquire into and report the facts, and may decree distribution accordingly ; or upon the application of any of the parties may direct an issue for the determination of disputed facts."   It must be conceded, we think, that the power of the court respecting " the apportionment or appropriation of liens " is not enlarged by a sale by the receiver under its order, in lieu of a sale on process upon a mortgage or judg-

ment. Whilst a sale by a receiver under an order of court is not within the letter, it is clearly within the spirit of § 9 of the act of June 16, 1836, and as, in the court below and on the argument here, it was allowed the same effect as a sale on an execution issued upon a mortgage or judgment, we shall for the purposes of this case so consider it. It is certain that a sale upon any of the judgments obtained on the claims of the mechanics and material-men would have discharged the lien of the mortgage, and passed the title to the entire property to the purchaser. Why? Because the property was bound by the lien of such judgment. The writ of levari facias is available only in the enforcement of the lien and in the sale of property subject to it. In the appropriation of the proceeds of such a sale, may an auditor, for distribution only, restrict the lien of the judgment to a portion of the property sold? We think not. The power of the auditor is defined by the order appointing him, and he must keep strictly within it. He cannot revise the judgment; he must accept it as certified to him by the proper custodian of the record. If it is alleged that the date of the lien, as shown by the record, is incorrect, he cannot receive evidence to change it: Kendig's Ap., 82 Pa. 68.

If the record of the judgment shows the extent of its lien, an auditor appointed to distribute a fund cannot disregard it. A mechanic's lien claim is, before judgment, " open to impeachment by all having an interest in its validity as owner, purchaser or lien creditor," but afterwards it is subject to the well settled rule " that a judgment, though irregular on its face, and even illegally recovered, cannot be impeached collaterally by third persons, though lien creditors of the defendant, except for fraud or collusion : " Lauman's Ap., 8 Pa. 473.

Whether § 9 of the act of 1836 applies to the case of a judgment on a mechanic's lien, in which the claimant has designated the curtilage with the knowledge and acquiescence of the owner and lien creditors, is a question we are not required to consider, because no proceedings have been instituted which raise it. When the auditor was appointed there was no suggestion that any dispute would arise before him touching the right of the mechanic's lien creditors to be first paid from the proceeds of the sale of the property against which their claims were filed, and no application has been made to the court for the appoint-

ment of an auditor to inquire into and report the facts, for an issue to determine them, or for an order enlarging the powers of the auditor appointed to distribute the fund.

We think the learned auditor was right in holding that he was not authorized by his appointment to ascertain the curtilage of the oil refinery. This conclusion is the logical result of the cases relating to the powers of auditors, when considered in connection with the provisions of the act of 1836, and the decisions of this court in Lauman's Ap., supra : Armstrong v. Hallowell, 35 Pa 485 ; Shryock v. Buckman, 121 Pa. 248, and Harbach v. Kurth, 131 Pa. 177.

The specifications of error are overruled, and the decree is affirmed and appeal dismissed at the costs of the appellant.

## MANUFACTURERS' GAS COMPANY'S APPEAL.

OPINION BY MR. JUSTICE McCOLLUM, May 9, 1892 :

This appeal is from the same decree as the appeal of the Imperial Refining Company, Limited, decided at this term, and for the reasons given in the opinion filed in that case, the specifications of error are overruled.

Decree affirmed and appeal dismissed at the costs of the appellant.

## OIL CITY SAVINGS BANK'S APPEAL.

OPINION BY MR. JUSTICE McCOLLUM, May 9, 1892 :

This appeal involves the same questions raised on the appeal of the Imperial Refining Company, Limited, decided at this term, and is from the same decree. The specifications of error are overruled for the reasons given in the opinion filed in that case.

Decree affirmed and appeal dismissed at the costs of the appellant.