Thomas B. Hamilton, Austin M. McClain, S. Austin Brew and George T. Brew, doing business as Brew, McClain & Co., for use of The Warn-McClain Co., Appellants, *v.* John M. Hastings.

*Contract—Evidence—Relevancy of evidence.*

In an action by a partnership to recover the price of lumber, where defendant alleges that he did not buy the lumber from the plaintiff, but from another firm, and that the person who made the sale to him was a member of both firms, but had made the sale for the second firm in consideration of defendant's releasing it from another contract, evidence relating to that contract, how far the same had been executed, and the state of accounts between defendant and the second firm are admissible for the purpose of showing circumstances tending to make the proposition advanced by the defendant more or less probable.

In such cases much latitude must necessarily be allowed in the admission of corroborating testimony.

Argued Oct. 9, 1895. Appeal, No. 103, Oct. T., 1895, by plaintiffs, from judgment of C. P. Jefferson Co., May T., 1892, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit to recover for goods sold and delivered. Before CLARK, P. J.

The court charged in part as follows :

In the issue you are trying, Thomas K. Hamilton, Austin M. McClain, S. Austin Brew and George T. Brew, doing business as Brew, McClain & Company, now for the use of The Warn-McClain Company, are the plaintiffs, and John M. Hastings the defendant. The action is assumpsit, brought to recover the value of four cars of lumber, amounting to $360, which plaintiffs allege they furnished the defendant, two cars on August 31, 1891, and one on the 4th and one on the 7th of September, 1891, at the price of $7.50 per thousand feet. There is no dispute

as to the amount of lumber or the price; and we may say that so far as that branch of the case is concerned, the plaintiffs, if entitled to recover anything, are entitled to $360 with interest from ninety days after the date say, if you please, of the last item, which would be ninety days after September 7, 1891.

If that is all there was in this case it would be very easy to arrive at the result so far as finding for the plaintiffs; but the defendant alleges he has a defense to the whole of the claim. He first says that on the 20th of August, 1891, he met A. M. McClain, of the firm of A. M. McClain & Company here, at Brookville, and that between here and Grove Station, while walking along, there was a distinct agreement between Mr. McClain and himself that if he would release that firm of a certain contract made February 6, 1891, they would furnish him with some four or five cars of lumber, such as he wanted (boards), and that this lumber was furnished him by A. M. McClain & Company and not by the plaintiffs.

[We refer to these contracts, gentlemen, because the contentions arise out of what took place on August 20, 1891, between A. M. McClain, of A. M. McClain & Co., and the defendant, J. M. Hastings.

A great many exhibits have been offered, some of which, we are free to confess, have very little to do with the case, but some are material as bearing on the question of the indebtedness of A. M. McClain & Co. to the defendant or his indebtedness to them; in other words, as to what the account would be between them. They were not admitted for the purpose of settling accounts between A. M. McClain & Co. and the defendant, but merely to show the state of accounts at that particular date.] [23]   A man may write letters and he may make claims and they may not be any evidence. The question in this case is, What was the contract or agreement between A. M. McClain & Co. and J. M. Hastings on August 20, 1891, and what did the parties do in pursuance of that agreement?

[As to the state of the accounts between the parties, was there a balance due Hastings on the 20th of August, 1891, as testified to by him? If you take the letter of McClain & Co. prior to that time, and we submit all of this to you, they claim Hastings is behind. But we have a starting point in this case that is pretty thoroughly settled by the testimony, which is, that

the books of A. M. McClain & Co. were balanced about the 13th of April, A. M. McClain testifying that the payment at a certain date balanced the account at that time with the exception of a charge of $9.54.   He then detailed the amount of lumber shipped after that time, stating the number of the cars and the price of the lumber, and you recollect he said that with the burned lumber and the car of cherry taken out, there was left a balance of $812.06 in favor of J. M. Hastings, taking the books as they stood with the charges made and the credits given.

He further admitted that with the charge of $511 for the 73,000 feet of burned lumber at the Crawford Mill, there would still be a balance due Hastings of $301.06.   This then would be the state of the account between McClain & Co. and J. M. Hastings, if we believe the testimony of A. M. McClain.   We believe this was figured up until the 26th of August, 1891, the time defendant called for in the examination, and included all of the lumber shipped and all of the credits.] [24]   There were some statements made before by Mr. McClain, brought out on cross-examination by plaintiffs' counsel, in which the debit side was stated to be a different amount from this, and the credit side different, and showing by that a balance due A. M. McClain & Co.; and again you take the statement offered in evidence by the defendant and there would still be a larger balance than $301.06. · We do not recollect what the plaintiffs' claim in that statement is.

[As to the amount of the charge of McClain & Co. against Hastings for the burned lumber, that is a matter we want to call your attention to.   Their claim is $547.50, being at the rate of $7.50 per thousand, and Mr. McClain testified here they were entitled to that because the lumber was there.   We will have to beg leave to differ with him there; they would not be entitled to the $7.50 per thousand from the fact the lumber was not loaded on the car, and could only have a claim of $7.00 per thousand under this contract.] [25]

There were some other matters testified to by Mr. McClain in regard to his taking the privilege of selling these boards of Mr. Hastings, that that is why he did sell.   Well, so far as that is concerned, although it does not enter into this case particularly nor would it have any bearing except as to the state

of the accounts between them, he had not any right to sell them unless the company obtained the right from and consent of Mr. Hastings.

[Bearing on the question of the amount of lumber, you recollect statements made by A. M. McClain showing the amount, commencing sometime after this settlement and reporting the lumber at Crawford Mill, amounting in all to 280,000 feet. Of course it is claimed there is quite a discrepancy in his testimony, where he gave it the first, and at this particular time; and then the defendant gives in evidence the amount of lumber shipped (that is, as testified to by A. M. McClain) from the time this balance was struck on the book of the company. Now, we think, gentlemen, it is for you to ascertain what balance was due and unpaid as between these parties and from whom it was due; this merely bearing on the testimony of Mr. Hastings, whether it corroborates him in his statement; and in connection with that we will have to refer to some of these exhibits.] [23]

August 17, 1891, A. M. McClain & Company wrote and mailed the following letter to J. M. Hastings: (The letter-head is "A. M. McClain & Company.")

"RIDGWAY, Pa., August 17th, 1891.

"J. M. HASTINGS, Esqr.

"Dear Sir:—We are about cut out at Crawford and will not cut any more there after 15th of September, as we have sold that mill and agreed to give possession then, and we would like to ship out the stock now cut and stuck there again that time. Can you do so? (About 275,000 feet.) If not, shall we do so? And we can ship you lumber from other points, or hemlock shingles, to cover what may be due you for money advanced thereon. We will have nothing to keep us in that section after 15th next month, and you can see the necessity of us getting through by then.

"Truly,

"A. M. McCLAIN & Co."

Now, gentlemen, bear in mind what is in that letter. The next day after the date of that, or on August 18, 1891, J. M. Hastings writes the following:

"PITTSBURG, Pa., August 18th, 1891.

"MESSRS. A. M. McCLAIN & Co., Ridgway, Pa.

"Gentlemen:—Your favor of the 17th inst. at hand. I will probably see you at Brookville and will then talk the matter over.

"Yours truly,

"J. M. HASTINGS.

"Dictated by J. M. H."

Then the next we have is the meeting of A. M. McClain and J. M. Hastings of Brookville, and Mr. Heidrick, we believe, had some business with the parties and walked down to the siding with them. Mr. Hastings says this meeting was in pursuance of and by arrangement indicated in the letters of August 17th and 18th, and testifies that he then and there, on the way between Brookville and Rose Station, made the agreement releasing the plaintiffs, or giving them the privilege of shipping out this lumber. We will refer more particularly hereafter to his testimony on that branch of the case.

In substance the defendant claims he just did what A. M. McClain & Company substantially requested him to, in their letter of August 17th. We have some of the evidence given by him, taken from the stenographer's notes, as follows:

J. M. Hastings testified: "Met A. M. McClain in Brookville, August 20th. Had a letter from him August 18th in regard to releasing him from contract I had with A. M. McClain & Company at the Crawford Mill. We talked the matter over on our way to Rose Siding, and a final result of our conversation was that I agreed to release Mr. McClain from the contract of the Crawford Mill, and also gave him the privilege of shipping out the lumber at that mill, provided he would furnish me other lumber to make good what advance money I had paid to A. M. McClain & Company on the Crawford Mill contract.

"Mr. McClain said to me then he had some boards at another point that he would ship me, and then I told him he could ship me three, or four, or five cars of boards, and I would take my chances to sell them in the market. Gave this order to A. M. McClain & Company as represented by A. M. McClain."

On cross-examination he further testified:

"The substance of Mr. McClain's and my conversation was

that I released Mr. McClain from the contract at the Crawford Mill, and he agreed to ship me other lumber to take its place, and among the other lumber were these four car loads of boards, which Mr. McClain told me he had and could ship at once, and which he shipped me. I told him to ship those three or four or five car loads of boards to me at Pittsburg, and I would try and sell them, take my chances on selling them. The substance of our conversation was that all the lumber that was ordered was coming direct from A. M. McClain & Company; Brew, McClain, or no other firm, was mentioned at the time whatever; the lumber was coming, as I understood, from A. M. McClain & Company in pursuance of our releasing him from this contract at the Crawford Mill."

The plaintiffs have offered the testimony of A. M. McClain, which was called out on the cross-examination. He testifies:

"Mr. Hastings gave me a verbal order for four car loads of hemlock boards, naming the widths and lengths; he gave the order to me personally. I was one of the managing members of the firm of Brew, McClain & Company at that time; Brew, McClain & Company had no dealings with Mr. Hastings prior to that time; they had only been organized a short time and that was about the first lumber they had to sell; I do not know whether Mr. Hastings knew at that time there was such a firm as Brew, McClain & Company or not. Q. Did he tell Brew, McClain & Company to ship him that lumber? A. I don't think that he did. Q. You say he simply gave you an order to ship those four cars of boards? A. Yes, sir. Q. And you afterwards placed the order with Brew, McClain & Company? A. Yes. Q. Then it was by your direction that Brew, McClain & Company shipped the lumber to Hastings? A. Certainly. Q. Why did not you place it with A. M. McClain & Company? A. They did not have the boards or I would probably."

On cross-examination by Mr. Corbett, Mr. McClain further testified:

"Q. On the contract itself, Mr. McClain, what balance was owing A. M. McClain & Company on the 20th of August, 1891, by Mr. Hastings? A. About twenty-two hundred dollars. Q. Did Mr. Hastings get some of that lumber afterwards? A. Yes, sir, two car loads on the 24th of August."

Redirect-examination by Mr. Clark.

" Q. Mr. McClain, which of those items were credited in your ledger from which you were testifying last evening, after the account was balanced in April?    A. Six hundred and eighty-three dollars and seventeen cents, if I remember right, $1,950.97, and $151 and some cents.    Q. Did not the item you have credited April 13th, $1,132.12, balance that account?    A. I think it did up to that time, yes, sir, except I want to make one explanation, except an interest charge of $9.54.    (That was the amount referred to before,)—that was charged afterwards."

[We would say, gentlemen, that A. M. McClain, when called to the witness stand on behalf of the plaintiffs, denied that he ever made any contract such as testified to by J. M. Hastings.    So we have the two parties testifying, one one way, and the other you might say to the contrary ; they do not agree in their testimony.    It is for you to take all the evidence and from it determine what the contract was, and bearing on that you will take into consideration the state of their accounts, and see who is corroborated in this matter, whether Mr. Hastings or Mr. McClain.]

The credibility of these witnesses is for you ; you may consider their interest or want of interest, and their manner on the witness stand, the manner in which they answered the questions, all of that is for you to determine as to credibility.

We now come to the matter of the cherry lumber.    There are a number of exhibits on that subject, which will all go out with you.    Mr. Hastings says he never gave an order for that cherry ; that Mr. McClain talked to him at one time, wanting to know what would be suitable sizes and lengths for that market, that was a year before, but that he never ordered the car of cherry and immediately sent back the invoice he had received.    You will recollect the testimony from that out, and the considerable amount of correspondence.    In the end A. M. McClain & Company ordered Hastings to ship the car to Buffalo, and that appears to have been done ; yet, there was no credit given for that car in this account, as Mr. McClain stated.

[We think, gentlemen, we have referred to this sufficiently. We want to refer to as much evidence on one side as the other. It is for you to determine whether A. M. McClain & Company

owed Hastings any amount on the 20th of August, 1891, or he owed them. How is that? You have heard the evidence.] [23]

We now come to another branch of the case, and this is in rebuttal. The plaintiffs say that when this lumber was shipped the bills were rendered with each car. The bills for the four cars of boards are dated September 1st, 2d, 4th and 8th; two of the cars are charged in the books as shipped on the 30th of August, one on September 4th, and another September 7th, 1891. The bills were sent to Hastings and have been offered in evidence. The plaintiffs further say Mr. Hastings had knowledge that he was buying this lumber from Brew, McClain & Company, and they have offered evidence to show that he had credited the amounts for each one of those cars to that company on his books. They say that is some evidence to corroborate the testimony of A. M. McClain. You heard his testimony bearing on that branch of the case. On the other hand Mr. Hastings testifies:

"The entry in the day book to Brew, McClain & Company was made so that we could be in position to tell in what relation the account of A. M. McClain & Company would be on account of the annulling of our contract. Or, in other words, so that if we would refer to this account we could then tell whether we had enough lumber to make good the advances we had made A. M. McClain & Co., and also in case there were any excess freight bills over the rate of the Crawford Mill, it would be charged in that account and then transferred to A. M. McClain & Co.'s account. I instructed Mr. Veitmeier to carry out the account as I started and I think I explained to him at the time—I am not certain. Believe I did direct him that when freight bills were all in to transfer it and settle up with A. M. McClain & Company."

In connection with that you will recollect there were a check and a statement made out that included sixty-four cars of lumber to A. M. McClain & Company and gave the amount of the account, closing it up with the check of $166 and some odd cents, which squared the account. That statement will go out with you.

Now, that check sent them and in that way is a matter to be considered: McClain & Co. evidently got the money on it; but

we say to you in this case there could not be any set-off; your verdict must be either for the plaintiffs for the whole claim or for the defendant.

[There is also in evidence the fact that this lumber was charged, or rather credited, we believe, to the account of A. M. McClain & Company. You will consider that with the other evidence.] [26]   There are some letters after this and there was one, referred to by Mr. Corbet in his argument, of a statement that was sent by J. M. Hastings, and he argued there was nothing in that statement concerning these four cars of lumber.

Verdict and judgment for defendant.   Plaintiffs appealed.

*Errors assigned*, among others, were (23–26) above instructions, quoting them.

*Charles Corbet*, *W. W. Ames* with him, for appellants.—The learned court apparently forgetful of the fact that the issue was between Brew, McClain & Co., and J. M. Hastings, permitted the latter to engage in a contest, raised and carried on by himself as to the state of accounts or indebtedness between himself and A. M. McClain & Co., on August 20, 1891, as well as before and after that date.

*George W. Means*, *B. M. Clark* with him, for appellee.—It is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable : Wharton on Evidence, bk. 1, sec. 21; Stephens's Evidence, 18; Gerish v. Chartier, 1 C. B. 13.

PER CURIAM, January 6, 1896 :

The question at issue in this case was whether the defendant had given an open order for the lumber in suit to A. M. McClain, which the latter turned over to the legal plaintiffs, or whether there was a special contract whereby A. M. McClain agreed to furnish lumber to cover what might be due defendant for money advanced to A. M. McClain & Co., on account of lumber which had been ordered from the Crawford mill but not delivered. The evidence—relating to the Crawford Mill contract, how far the same had been executed, the circumstances connected therewith, and the state of the accounts be-

tween A. M. McClain & Co. and defendants, and constituting the subjects of complaint in many of the twenty-nine specifications of error—was rightly admitted. That evidence did not raise an independent issue. It was introduced merely for the purpose of showing circumstances, etc., which tended to make the proposition in controversy more or less probable. Much latitude must necessarily be allowed in the admission of corroborating testimony in such cases. The learned trial judge, in some of his rulings, and in those portions of his charge embraced in the specifications of error referred to, carefully reiterated that this evidence was received merely for the purpose of corroboration. The defendants have no just cause to complain of the rulings and instructions.

Neither of the remaining specifications of error involves any question that requires discussion, or even special notice. They are all dismissed.

Judgment affirmed.