# Winters, Appellant, *v.* Schmitz.

*Contract—Written and parol contract—Evidence—Question for jury—Fraud.*

When matters of fact, depending on oral testimony, are connected with and necessary to a proper understanding of written evidence, the court is not bound to consider and give effect to the latter as though it

stood alone; an admixture of oral and written evidence draws the whole to the jury.

When an instrument has been obtained for one purpose and an attempt is made to use it for a different and unfair purpose, parol evidence is admissible to establish the contemporaneous agreement as to the purpose for which it was to be used. Nor is it essential to the admission of parol evidence that a fraud was originally intended. It is enough that, though the parties acted in mutual good faith at the inception of the transaction, an attempt is made to wrest the instrument to a purpose not contemplated, or use it in violation of the accompanying agreement.

*Contract—Building contract—Price—Evidence—Expert testimony.*

In an action to recover on a building contract where the plaintiff claims twice the amount which the defendant alleged was the contract price, the defendant may prove by competent experts that the amount claimed by the plaintiff was more than twice what would be a fair and liberal price for the work; but the jury may use this testimony only as corroboration of the defendant's testimony as to the price agreed upon, and for no other purpose.

Argued Nov. 14, 1907. Appeal, No. 76, Oct. T., 1907, by plaintiff, from judgment of C. P. Lancaster Co., Nov. T., 1905, No. 48, on verdict for plaintiff in case of Aldus J. Winters v. Joseph Schmitz. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on a building contract. Before LANDIS, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Now, which of these parties is correct as to the demands thus made before you? That is a question of fact, which this jury must determine. You have heard what the plaintiff has testified to, in regard to the making of the contracts, and also what was done when the contract and agreement as to the release of the mechanics' liens was signed. If, from this and all the other evidence, you conclude that Winters's contracts were for $1,625 and $2,900 respectively, making a total of $4,525, and not for only $2,900, in the whole, and you also conclude that the prices claimed for the extra work are correct, then your verdict should be in his favor for the amount which

he here claims. If you conclude that the extras are not worth
what he says they are, then you will deduct such amount as
you think fit on that account. If, on the other hand, you be-
lieve what Schmitz has told you, that the contracts in the
aggregate were to be $2,900, and not $1,625 for the first con-
tract and $2,900 additional for the second contract, then your
verdict should be in favor of the plaintiff for $872.38, unless
you believe that the allowances which Schmitz has made for
extra work are insufficient, and, in that event, you will add
to that amount such sum as you think is proper to compensate
Winters for the extra work which he has done in and about the
defendant's building.] [1]

[In this connection, you will remember what Schmitz testi-
fies as to what occurred when he signed the agreement to re-
lease the liens, and also the testimony of those who saw it
signed, as well as that of Winters and Rothenberger, both ad-
mittedly present when the agreement was ordered and who
have testified before you as to what transpired at that time.
In fact, you will take into account not only this testimony,
but also all the testimony which has been produced upon the
witness stand concerning not only this agreement, but also
concerning the reasonable and proper price for which this
work ought to have been done. This testimony, however,—I
mean, as to the proper and reasonable price for the work, as
presented by the defendant,—is only to be considered by you
upon the point as to whether or not it was likely that Schmitz
made the second contract as a separate contract for $2,900,
and for no other purpose. If he did make the second contract
for $2,900, he must pay that amount, in addition to the $1,625,
which it is admitted was his first contract, and this, under
those circumstances, he must do, whether that contract was a
reasonable or unreasonable contract, because, if he made it,
it makes no difference, and he is in any event, then, bound
upon his contract. You will consider, of course, all the evi-
dence that has been produced before you, and from it, make
up what you think is a proper and just verdict.] [2]

Plaintiff presented these points:

2. Under the evidence submitted in this case, the agree-

ment is binding upon the defendant, and under its terms, the defendant agreed to pay the plaintiff $4,525 for the alterations of this building according to plans, etc. *Answer:* Refused, as the agreement is only evidence as to what the agreement was, and not conclusive upon the parties. [3]

3. The verdict of the jury should be in favor of the plaintiff, and the contract of July 12, 1905, should be sustained. *Answer:* Refused. [4]

4. The plaintiff is entitled to recover the full amount on his contract, less deductions for sums paid him, and in addition thereto, is entitled to recover for his extra work what the jury may deem proper compensation for the same. *Answer:* That point is affirmed; but what is the full amount of his contract, whether it is $2,900 or $4,525, is for the jury to determine. [5]

5. The contract in writing of July 12, 1905, being in writing and signed by the parties, where there is a dispute as here, cannot be changed, varied or set aside by the defendant, unless by two witnesses, or one witness and corroborating circumstances equivalent to the testimony, in addition to the testimony of one witness, at the time it is signed, which was not done in this suit, and therefore such written contract must stand as the agreement of the parties. *Answer:* Refused. [6]

Defendant presented these points:

1. If a change in the agreement stipulating against mechanics' liens was made by striking out the words "a certain sum of money stipulated in a separate contract" and inserting therein in place thereof, "the sum of $4,525" and the defendant, Joseph Schmitz, was deceived thereby, so that he did not know that the sum of $4,525 was named in the agreement, and he signed the agreement without his attention being called to it, and he did not see it as part of the agreement, then it is not part of the agreement, and he is not bound by it. *Answer:* We say, in answer to this point, that, if the jury believe the facts as herein stated, then Schmitz is not concluded by this part of the stipulation or release. Especially is this so, if the jury believe that the paper was prepared merely for the purpose of stipulating against mechanics' liens, according to the testi-

mony of the parties, and that it was not entered into as an agreement of the parties, fixing the contract price of the work. [7]

2. If at or prior to the signing of the agreement stipulating against mechanics' liens, nothing was said to the defendant, Joseph Schmitz, about the change made in said agreement and the interlineation in said agreement of the sum of $4,525 and he signed the agreement without knowing it, then he is not. bound by it. *Answer:* That point is affirmed; although, in addition, we say, everyone is, of course, presumed to know what he signs, and that presumption arises against Schmitz in this case. Of course, the jury may find that presumption to have been rebutted by the proof; but that is a matter which is submitted for them to pass upon, under all the evidence. [8]

Verdict and judgment for plaintiff for $978.11. Plaintiff appealed.

*Errors assigned* among others were (1–8) above instructions, quoting them; (9, 10) admission of testimony of experts as to the value of the work.

*B. F. Davis,* for appellant.—It is not enough that there are parol stipulations contradictory of a written agreement in order to change its legal effect. There must be fraud, accident or mistake, and the evidence of either must be clear, precise and indubitable: Hill v. Gaw, 4 Pa. 493; Anspach v. Bast, 52 Pa. 356; Phillips v. Meily, 106 Pa. 536.

If part of the contract could be altered by parol, then it all becomes parol and both the written agreement and record thereof are set aside: Vicary v. Moore, 2 Watts, 451.

*John E. Snyder,* for appellee.—It is as much a fraud to obtain a paper for one purpose and use it for a different and unfair purpose, as to obtain it by fraudulent statements: Phillips Gas and Oil Co. v. Pittsburg Plate Glass Co., 213 Pa. 183; White v. Black, 14 Pa. Superior Ct. 459; Dutton v. Tilden, 13 Pa. 46; Batdorf v. Albert, 59 Pa. 59; Kramer v. Dinsmore, 152 Pa. 264; Renshaw v. Gans, 7 Pa. 117.

OPINION BY RICE, P. J., July 15, 1908:

In June, 1905, the plaintiff entered into a contract with the defendant to make certain alterations and repairs to the defendant's buildings for $1,625. Later in the month, after this work was under way, a second contract was entered into by them for additional alterations, and for a change in the alterations contemplated in the first contract. There is no dispute as to the making of these two contracts, or as to the plaintiff's performance, or as to the price to be paid under the first, or as to the fact that the additional sum to be paid under the second contract was agreed upon, but there is a dispute as to what the agreed sum was. The plaintiff alleged in his statement of claim and gave evidence that it was $2,900, thus making his entire claim, apart from extras which are not in dispute, $4,525. The defendant testified that the agreed price was $1,275, or, to be more exact, that the second contract was that all of the alterations were to be made for $2,900. It is enough to say, without obscuring the statement by unnecessary recital of dates and amounts, that the verdict of the jury implies a finding that the plaintiff agreed to make the alterations contemplated by the two contracts for $2,900. What occurred after these contracts were made and were partly performed is to be considered in the light of this established fact.

This being the contract between the parties, and the greater part of the alterations having been made, the defendant on July 11, requested the plaintiff to give an agreement to be filed in the prothonotary's office that would protect his property against mechanics' liens. This in substance is the plaintiff's testimony adduced by his own counsel, in the presentation of his case in chief, and in his direct examination. The defendant's version is that he told the plaintiff he had been negotiating for a loan and the parties had inquired of him whether he had a "release of liens," and that thereupon the plaintiff said: "That is all right; we can easily fix that up; we will go to Mr. Rothenberger." Thereupon they went to Mr. Rothenberger, the architect, and requested him to prepare a contract against mechanics' liens. He was given no instruc-

tions as to the terms or the price, and nothing was said upon this subject by either of the parties. Rothenberger, who was called as a witness by the plaintiff, testified upon cross-examination that he was asked to prepare a contract against mechanics' liens, and was not asked to prepare anything else. This testimony was not contradicted. Without going further into detail as to the preparation of the paper, we are warranted in saying that the testimony furnishes no ground for inference that the parties intended to make a new agreement as to price or as to the alterations of the building in the place of the existing one, but that all of the evidence leads to the conclusion that their intention and their instructions to Rothenberger were to prepare a paper for their execution, which would protect the defendant's property against mechanics' liens, and that this was the sole purpose they intended the paper to accomplish. Mr. Rothenberger could not attend to the matter immediately, but later prepared a typewritten paper, dated July 12, purporting to be an agreement for making the alterations in the defendant's buildings, and containing a formal stipulation against liens. In the clause relating to the amount to be paid for the alterations appeared the words "a sum of money stipulated in a separate contract," and in the clause relating to the time of completion appeared the words, "time stipulated in a separate contract." On July 12 the plaintiff called for the paper, and by his direction, the defendant not being present and not having been consulted, Rothenberger drew a line through the above-quoted words, and in the first of these clauses interlined with a pen the words and figures "the sum of four thousand five hundred and twenty-five ($4,525.00) dollars" and in the second clause substituted in the same manner the words and figures "15th day of September, 1905." The plaintiff then took the paper to the defendant, and after it was executed took it to the court house for filing. The testimony as to what occurred at the time of execution is not in conflict except as to one particular. The defendant testified that he did not read the paper, while the testimony of the plaintiff and his witnesses tends to show that he, at least, "leafed it over," and had an opportunity to read it. But the

plaintiff admits that he did not call the defendant's attention to the alterations in the paper, and there is no testimony that anything was said as to the price or as to any other matter, which, apart from the paper itself, would tend to show that the parties intended to substitute it for the contracts under which the work was being done. On the contrary, the defendant's testimony is that when the plaintiff produced the paper for his execution he said: "Here is the release of liens I got; sign it." This testimony is not contradicted. Taking the plaintiff at his word, there was no change of intention on his part as to the purpose for which the paper was to be used, and it is evident that there was none on the defendant's part.

It is to be observed that the plaintiff in his statement of claim sets up the two parol contracts of June as entering into his cause of action, and says that "after the greater part of said work had been completed and most of said materials furnished for the alterations of said buildings . . . . a written article of agreement was entered into," reciting the terms and attaching a copy of the paper of July 12. There is no averment that this was intended to abrogate or to be a substitute for the contracts under which the work had been entered upon and carried so far toward completion. It is further to be noticed that the subjects investigated upon the trial, namely, the making and the terms of the two June contracts, the purpose for which the paper of July 12 was prepared, the instructions to the scrivener, the interlineations in the paper and its execution, were thrown open to the defendant's parol testimony relating thereto, by the parol testimony of the plaintiff and his witnesses, given upon the same subjects, in the presentation of his case in chief. Notwithstanding this manner of presenting his case in his pleadings and evidence, the plaintiff contends that the paper of July 12 is conclusive upon the question of consideration. We cannot concur in that conclusion. That paper, on its face, does not purport to be an agreement as to past transactions. In order to connect it with them parol evidence was necessary. The plaintiff appreciated this, and presented his case accordingly; but as so presented the principle was applicable that when matters of fact, de-

pending on oral testimony, are connected with and necessary to a proper understanding of written evidence, the court is not bound to consider and give effect to the latter as though it stood alone; an admixture of oral and written evidence draws the whole to the jury: Home Building and Loan Association v. Kilpatrick, 140 Pa. 405; Chicago Cottage Organ Co. v. McManigal, 8 Pa. Superior Ct. 632; Wetherill Bros. v. Erwin & Wagener Co., 12 Pa. Superior Ct. 259. This is so, not only because of the manner in which the plaintiff presented his case, but also because the case is within the well-recognized exception to the general rule against permitting written instruments to be affected by parol testimony, that when an instrument has been obtained for one purpose and an attempt is made to use it for a different and unfair purpose parol evidence is admissible to establish the contemporaneous agreement as to the purpose for which it was to be used. "Nor is it essential to the admission of parol evidence that a fraud was originally intended. It is enough that, though the parties acted in mutual good faith at the inception of the transaction, an attempt is made to wrest the instrument to a purpose not contemplated, or use it in violation of the accompanying agreement:" Rearich v. Swinehart, 11 Pa. 233. This exception to the general rule has been recognized in many subsequent cases, and as late as the case of Phillips Gas & Oil Co. v. Pittsburg Plate Glass Co., 213 Pa. 183. White v. Black, 14 Pa. Superior Ct. 459, is a very similar case to the present as appears by the second paragraph of the syllabus, which we quote: "In an action for rent due under an alleged parol lease where the defendant introduced as part of his defense a subsequent written lease, it was competent for the plaintiff in rebuttal to introduce evidence tending to show that the defendant did not go into possession under the lease last referred to; that it was not executed until after the term had well progressed; and that it was then signed and given to the defendant, at his request for the specific purpose, and for that purpose only, of being used by him to show in litigation then pending in court between him and a third person, that the plaintiff had admitted him in his own right as tenant of the premises." If there ever can be a case where the effect of a

written instrument can be controlled by clear, convincing and indisputable parol testimony of the sole effect and purpose the parties, at the time they executed it, intended it to have and accomplish, this is such a case. The learned trial judge submitted the question of consideration to the jury, and also submitted the paper of July 12, to them as evidence upon that question, but held that it was not conclusive. There was no error in the submission or in the manner of the submission of this question.

The fact in dispute was the contract price for the work done under the second contract. Was it $2,900 as testified by the plaintiff, or $1,275 as testified by the defendant? In corroboration of his testimony, and for that purpose only, he was permitted to prove by competent experts that $2,900 was more than twice what would be a fair and liberal price for the work. It must be conceded that such testimony ought to be admitted with great caution because it raises a collateral issue which may unduly prolong the trial, and may divert the attention of the jury from the real issue. But if the defendant could prove to the satisfaction of the jury that there was so great a discrepancy between the price claimed and the price for which the work could have been done, we cannot say that this fact might not be taken into consideration by the jury in corroboration of his testimony as to the price agreed upon. Hamilton v. Hastings, 172 Pa. 308, recognizes a principle under which, in the special circumstances, the testimony could be admitted. The learned trial judge was careful to say when he admitted the testimony that it could only be considered for the purpose above stated, and in his charge to the jury he controlled its effect by the following instructions which the jury could not have misunderstood. He said: "This testimony, however,—I mean, as to the proper and reasonable price for the work, as presented by the defendant,—is only to be considered by you upon the point as to whether or not it was likely that Schmitz made the second contract as a separate contract for $2,900, and for no other purpose. If he did make the second contract for $2,900, he must pay that amount, in addition to the $1,625, which it is admitted was his first contract, and

this, under those circumstances, he must do, whether that contract was a reasonable or unreasonable contract, because, if he made it, it makes no difference, and he is in any event, then, bound upon his contract."

All the assignments of error are overruled and the judgment is affirmed.