# Kreusler, Appellant, v. Glukoff Company.

*Mechanics' liens—Release of liens—Notice—Inquiry—Case for jury.*
Where a purchaser of a building at a bankrupt's sale has notice from the record that there is an apparent valid subsisting mechanic's lien of record against the property, the burden is upon him to show diligent inquiry if he desires to be relieved from the payment of the lien because of an outstanding release, not of record, and not intended for his protection; and the question whether he has made such diligent inquiry and from the proper sources of information, is for the jury.

Argued Oct. 26, 1908.    Appeal, No. 177, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Nov. Term, 1905, No. 737, for defendant non obstante veredicto in case of H. L. Kreusler v. Glukoff Company, Owner, and H. C. Burchinal, Glukoff and Company and Jacob Klein, Terre-Tenants.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ.    Reversed.

Scire facias sur mechanic's lien.    Before EVANS, J.

At the trial the jury returned a verdict in favor of the plaintiff for $6,820.77.    On a motion for judgment non obstante veredicto EVANS, J., filed an opinion entering judgment for defendant non obstante veredicto.    In this opinion the facts are stated as follows :

This suit is a sci. fa. sur mechanic's lien, filed by the plain-

tiff, H. L. Kreusler, and the facts as they appeared on the trial of the case were as follows:

The plaintiff was a general contractor, and as such had a contract with the Glukoff company for the erection of a building in the city of Pittsburg. Under the agreement between the contractor and the owner, the contractor was to furnish a release of liens by himself and all subcontractors and material men, to be delivered to one J. M. Stoner, Jr., who, upon the payment of all moneys due upon the contract, was to deliver the release of liens to the owner, the Glukoff company. The erection of the building having been completed, the Glukoff company arranged to place a mortgage upon the property to raise the necessary money to pay off the claims of the contractor, and it was discovered that the amount of money the owner was able to raise was not sufficient by $5,000 to pay off the contractor's claims. The Mercantile Trust Company of Pittsburg became surety upon a bond to the mortgagee, to indemnify the mortgagee from any loss occasioned by the filing of mechanics' liens. The owner requested from Stoner, who held the release of liens, that the release of liens should be delivered on the payment in cash of all the contractor's claim, except $5,000, and the delivery of a note for the balance. The jury has found, although the question was disputed, that Stoner refused this request on the part of the owner, but consented to the delivery of the release of liens to the Mercantile Trust Company, for the benefit solely of the mortgagee. Subsequently the Glukoff company went into bankruptcy, and the plaintiff, Kreusler, filed a lien, upon which this suit is brought. The property was sold at bankrupt sale to Burchinal. The deed from the trustee in bankruptcy to Burchinal recited that the conveyance was made subject, among other incumbrances, to the mechanic's lien. The release of liens as held by the Mercantile Trust Company was general upon its face; was directed to the owner, and purported to be a general and unconditional release of liens. The defendant, the terre-tenant, claims that because of the character of the release of liens, the plaintiff is estopped as to him in enforcing his lien against the property, and this is the sole question of law in dispute in this case. The situation, at the time of the purchase by Burchinal of the property at bankrupt sale, was the existence of the

mechanic's lien on record, of which, of course, Burchinal had notice ; the existence of a general release of liens directed to the owner, in the hands of the Mercantile Trust Company, who was surety to the mortgagee, against any mechanics' liens that might be filed ; the knowledge on the part of Burchinal of the existence of that general release of liens. Had there been no notice to Burchinal of the existence of the mechanic's lien, then unquestionably the existence of the release of liens, in the form in which it was in the hands of the Mercantile Trust Company, would have been a protection to him against the mechanic's lien. But the notice of the mechanic's lien upon record put him upon inquiry as to why, having given a general release of liens, the contractor had filed the mechanic's lien, and such inquiry he was bound to make, unless the situation was such that had he made the inquiry he would have gotten no information which would put him upon notice that the mechanic's lien was a valid lien in face of the release. Subsequent to the sale of the property to Burchinal, Kreusler, the plaintiff in the mechanic's lien, presented his petition to the bankrupt court, asking to be made a general creditor of Glukoff company, alleging in his petition that his mechanic's lien was invalid and of no effect because of an outstanding release of liens. And Kreusler testified, on the trial of this case, that he thought at that time that the release was a general release, and that it barred his right to recovery upon the mechanic's lien. So that if the purchaser, Burchinal, had inquired of Kreusler, the only information he would have gotten was that the mechanic's lien was invalid. The only other person, so far as the evidence shows, that he would have naturally inquired from was the holder of the release of liens, the Mercantile Trust Company ; and the officer of the Mercantile Trust Company, who received the release of liens from Stoner, testified on the trial of the case that he had no recollection of any statement upon the part of Mr. Stoner, when the release was delivered to him, in any manner changing or limiting the effect of the release. So that if the purchaser at the bankrupt sale had made inquiry as to why the mechanic's lien had been entered, after what purported to be a general release of liens had been delivered, the only information he could have gotten was that the release had the full effect that it appeared to

have, and that the mechanic's lien was invalid because of the outstanding release.

It is well-settled law in Pennsylvania, that where inquiry would not have revealed the fact, then inquiry is not necessary. " The general doctrine is that whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchaser and creditors, and would lead to knowledge of the requisite fact by the exercise of ordinary diligence and understanding : " Jaques v. Weeks, 7 Watts, 261. It would not be disputed that had Burchinal, before purchasing at the bankrupt sale, gone to Kreusler and asked him as to the mechanic's lien that he had filed, and he had told him that that lien was invalid because of an outstanding release, that Kreusler would have been estopped from enforcing that lien against him. That is just what he would have told him had Burchinal made inquiry of Kreusler.

And now, July 3, 1908, judgment is entered for the defendant non obstante veredicto.

*Error assigned* was the judgment of the court.

*James W. Kinnear*, with him *T. D. McCloskey* and *Wm. E. Best*, for appellant.—The plaintiff was not estopped by the character of the release of liens in enforcing his mechanic's lien against the terre-tenants : Work v. Prall, 26 Pa. Superior Ct. 104; Hoagland v. Lusk, 33 Neb. 376 (50 N. W. Repr. 162); Megargel v. Megargel, 105 Pa. 475; Dungan v. Life Ins. Co., 52 Pa. 253.

*Chas. P. Orr*, of *Lazear & Orr*, for appellee.—The release was a good defense : Brown v. Williams, 120 Pa. 24; Collins v. Busch, 191 Pa. 549; Dowd v. Crow, 205 Pa. 214.

The terre-tenants were not bound to inquire as to the validity of plaintiff's claim : Dungan v. Life Ins. Co., 52 Pa. 253; Jacques v. Weeks, 7 Watts, 261; Wilson v. McCullough, 23 Pa. 440.

Opinion by Mr. Justice Elkin, January 4, 1909 :

The claim filed in this case so far as is disclosed by the record

is regular in form and a valid lien. The amount claimed represents a balance due the contractor on a building contract. As we understand the contention of the parties, there is no substantial dispute as to the amount involved, nor as to the validity of the lien, unless the claimant has been estopped from asserting his right to enforce it by securing a general release from the subcontractors, laborers and material men who furnished labor or materials in the erection and construction of the building or for the additions, alterations and repairs thereto. All questions of fact raised by the pleadings were submitted to the jury by the learned trial judge in a charge which accurately stated the issues of fact to be decided and the law applicable to the same. The jury returned a verdict for appellant, which means that the disputed facts were found in his favor. Upon motion filed, the learned court below directed judgment for defendant to be entered *non obstante veredicto* upon the whole record. The ground upon which the court rested its judgment was that if Burchinal, before purchasing at the bankrupt sale, had gone to Kreusler and asked him about the mechanic's lien, he would have been informed that it was invalid because of an outstanding release, or if he had gone to the Mercantile Trust Company, its trust officer, who received the release from Stoner, would have informed him that he had no recollection of any statement made at the time the release was deposited with the trust company limiting its effect or indicating that it was given for the specific purpose of protecting the trust company on its bond of indemnity and under the circumstances not to be considered a general release for the protection of the owner or subsequent purchasers. In this there was error in two respects. In the first place, it was error to assume as a fact what information Burchinal would have received had he made inquiry of Kreusler or of the Mercantile Trust Company prior to his purchase at the bankrupt sale. Under the facts and circumstances developed at the trial, it was for the jury, and not the court, to pass upon and determine this exact question. It may also be added, that Burchinal did not make inquiry of any person about the outstanding release, but purchased the property with record notice of the lien and subject to its payment, being satisfied no doubt to accept the property at the price bid and to pay in

addition the liens to which the property was made subject in his deed of conveyance. Again, it was error to hold as a matter of law, that the purchaser at the bankrupt sale, would have exercised the ordinary diligence required of him by limiting his inquiry·to the two parties hereinbefore mentioned. The original building contract contained no covenant against the filing of liens, nor did the first supplemental contract. The second supplemental agreement, and the only one of the three agreements entered into between the parties in which mention is made of mechanics' liens, contains a covenant, not against the filing of liens, which right had attached before this agreement was made, but providing that the contractor should furnish a release of liens before final payment. It should be borne in mind that this supplemental agreement was not entered into until the building was largely completed and was intended as an amicable adjustment of the disputes which had arisen between the parties. It cannot, therefore, be understood as an agreement providing against filing of liens in the first instance, but rather as a protection to the owner when the building should be completed and final settlement made against liens the right to file which had already attached. Stoner, the secretary of the Franklin Savings and Trust Company, was agreed upon as the custodian of the fund necessary to protect the owner from liens in the event of final settlement being made before the completion of the building. This covenant was evidently inserted at the instance of the owner, who was desirous of placing a mortgage upon the property to raise the money with which to pay the contractor. In the negotiations for the mortgage the owner requested the contractor to secure the release of liens and deposit it with Stoner, all of which was done. Under the terms of the agreement Stoner was to hold the release in the nature of an escrow to be delivered when a sufficient amount of money was deposited with him to pay Kreusler the entire balance due on the building contract. This condition was never fully met, and the release was not delivered to the owner or to the mortgagee. It was deposited with the Mercantile Trust Company for a special purpose, as the testimony of Stoner clearly sets forth. Inquiry should have been made of Stoner, the party named by the contracting parties who was to be the custodian of the

fund to protect against liens, and who did receive the release of liens to be handed over when the contractor was paid the amount due him under the contract, and who knew all of the facts better than any other person. Under these circumstances, it was clearly for the jury, under proper instructions by the court which were given, to determine whether inquiry had been made of the proper parties and with the diligence the law requires.

Again, it must not be overlooked that the purchaser at the bankrupt sale, and the corporation to which he subsequently conveyed the property, as well as the present holder of the title, all took deeds of conveyance made subject in express terms to the payment of certain mortgages and the mechanic's lien which is the subject of this controversy. It is true the purchase of the property subject to the lien placed no greater burden upon the purchaser than the lien itself, and if it was not a valid lien against the owner of the building it would not be binding upon the subsequent purchaser. It did, however, give the purchaser notice upon its face that there was an apparent valid subsisting lien of record against the property purchased, and put upon him the burden of diligent inquiry if he desired to be relieved from its payment because of an outstanding release, not of record, and not intended for his protection, as the testimony shows and the jury has found. After a careful consideration of the whole record, we have concluded that the questions involved here were for the jury and that the case was properly submitted in the first instance.

Judgment reversed and is here entered for appellant upon the verdict.