# Haney *v.* Moorehead, Appellant.

*Evidence—Contract—Written contract—Contemporaneous oral agreement—Substitution of one contract for another—Release of mechanics' liens.*

Where a subcontractor executes a release of mechanics' liens on several houses on an oral agreement with the owner that the latter will not use the releases unless all the materialmen sign, and subsequently, before all sign, at the request of the owner, and in substitution of the general release, the subcontractor executes an individual release covering each of the houses, but such individual releases are not obtained from all of the other subcontractors, testimony as to the oral agreement relating to the original release is admissible as to the individual releases, inasmuch as the whole matter is in effect one transaction.

If the release given was to be deemed executed only when all the members of the specified class had signed it, and the owner used it in a different way, and without the existence of the specified condition, such use is a fraud because it is in violation of the promise made at the time the paper was executed.

*Mechanics' liens—Parties—Intervention—Title company—Act of June 4, 1901, Section 23, P. L. 431.*

Where a title insurance company insures title to a property after the owner has presented to it certain releases of mechanics' liens, and subsequently, and after liens have been filed notwithstanding the releases, takes title to the property in order to protect its own interest, and it appears that the owner had attempted to make a fraudulent misuse of the releases, the title insurance company has no standing to intervene in a scire facias subsequently issued on the liens, as a party having a lien within the meaning of the Act of June 4, 1901, P. L. 431; nor has it a standing as an owner to offer in defense the releases in question, inasmuch as the filing of the liens after the date of the releases gave it actual or constructive notice that the plaintiffs in the scire facias claimed to have a charge on the property notwithstanding the releases.

*Mechanics' liens—Materialmen—Separate buildings.*

When a materialman delivers to an owner material for a particular house he cannot be deprived of his right to a mechanic's

lien against such house, because the owner has diverted the material to another building.

Argued April 20, 1915.    Appeal, No. 298, Oct. T., 1914, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1909, No. 6522, M. L. D., on verdict for plaintiff in case of Cornelius Haney and Edward T. Henson, Copartners trading as Haney, Henson & Company, to use of Edward T. Henson v. Thomas A. Moorehead, Owner or Reputed Owner, and the Land Title and Trust Company, Real Owner.    Before RICE, P. J., ORLADY, HENDERSON, KEPHART and TREXLER, JJ.    Affirmed.

Scire facias sur mechanic's lien.    Before McMICHAEL, P. J.

At the trial it appeared that in 1908 Thomas A Moorehead was engaged in a building operation comprising a number of dwelling houses in the City of Philadelphia. The plaintiffs furnished mill work for the operation.

On November 3, 1908, the claimant executed and delivered to Moorehead a release of liens covering all of the houses for the expressed purpose of enabling Moorehead to obtain money upon the security of mortgages upon the properties.    The claimant contends that at the time of the execution and delivery of the release it was verbally agreed that the release should not be used unless all the persons who should furnish labor or materials should execute the release of liens.    This agreement was denied by Moorehead.

On February 18, 1909, the claimant executed and delivered to Moorehead a separate release of liens upon each one of the properties.    The claimant stated that these separate releases were executed and delivered to Moorehead upon the same condition which attached to the execution and delivery of the first release of liens; this, however, was denied by Moorehead.

The Land Title and Trust Company insured the prop-

erty for the mortgage after the releases had been submitted to it.

On February 25, 1910, the mechanic's lien, was filed. On December 31, 1910, the Title Insurance Company took title to the property to protect its own interest. .

At the trial when J. Williston Smith, a witness for defendant, was on the stand, the following offer was made:

"Mr. Norris: I offer to prove by this witness that on or about the date of the execution of the individual releases of liens covering each property or of the general release covering all the properties they were delivered by Mr. Moorehead to the Land Title and Trust Company; that the Land Title and Trust Company relying upon these releases of liens thereupon insured the titles to mortgages upon the various properties; the proceeds of these mortgages were paid by the Land Title and Trust Company to Moorehead and paid by Moorehead to the subcontractors who furnished materials in this operation; and that subsequently after the incurring of this liability for the maintenance of these liens the Land Title and Trust Company was compelled to expend a large sum of money in order to protect the properties and to protect their liability, taking therefor a mortgage upon the premises; that neither the mortgage nor these moneys having been repaid the Land Title and Trust Company then took title to the properties on December 30, 1910.

"Mr. Williams: I object to any such testimony except testimony which shows the circumstances under which the Land Title and Trust Company took title and relating to the time of its taking title and anything that may have affected its title.

"The Court: I sustain the objection and give defendant an exception." (3)

Plaintiff submitted these points:

"4. In the absence of evidence the defendant the Land Title and Trust Company took title relying upon the release of liens the Land Title and Trust Company, hav-

ing taken title subsequent to the filing of the lien herein the rights of the said defendant rise no higher than the rights of Thomas A. Moorehead.

"Answer. That is affirmed." (4)

Defendant presented these points:

"1. The claimant having executed and delivered a release of liens, absolute on its face, is barred from asserting a claim of mechanic's lien, and the verdict must be for the defendant. Answer. Refused. (9)

"2. The claimant having put into the possession of Moorehead a release of liens absolute on its face for the express purpose of delivering it to the Land Title and Trust Company to enable it to insure the title of mortgages, the proceeds of which were to be used for the purpose of financing the operation, cannot set up a contemporaneous oral agreement which in any way alters the expressed terms of the release, and the verdict must be for the defendants. Answer. Refused. (10)

"3. Even if the jury believe that a contemporaneous oral agreement was made by Moorehead that the release of liens executed and delivered to him by the claimant for the purpose of inducing the Land Title and Trust Company to insure the title of mortgages were not to be used unless all the subcontractors signed them, the claimant is estopped from setting up such agreement as against the Land Title and Trust Company, upon the principle that where one or two innocent persons suffer through the act of a third, he who gave the aggressor the means of doing the act must alone bear the consequence of the act, and the verdict must be for the defendants. Answer. Refused. (11)

"4. Under all the evidence the verdict must be for the defendants. Answer. Refused. (12)

"6. That if the jury believed that any portion of the materials set forth in 'Exhibit B' attached to the claim of lien were furnished for the buildings erected on Walnut Lane, the amount claimed, therefore, to wit, $248.01,

cannot be claimed in this proceeding.   Answer.   Re-
fused.   (4)

"7. That having appropriated the amount paid on
account by Moorehead, to wit, $7,300, to the whole in-
debtedness, the claimant cannot change such appropri-
ation and by such appropriation be credited the amount
due upon contracts for 27 houses, to wit, $8,922, the sum
of $6,171.67, leaving due a balance of $2,750.33 or
$101.86 per house.  Answer.  Refused.  (15)

Verdict and judgment for plaintiff for $230.76.   De-
fendant appealed.

*Errors assigned* were, among others, (3) rulings on
evidence quoting the bill of exceptions; . (4, 9-12, 14,
15) above instructions quoting them.

*Charles C. Norris, Jr.,* with him *Henry T. Dechert,* for
appellant.—Cited as to the proof of the oral agreement
varying the terms of the individual releases of liens
dated February 18, 1909: Thomas v. Loose, 114 Pa. 35;
Wyckoff v. Ferree, 168 Pa. 261; Penna. R. R. Co.'s App.,
86 Pa. 80; Shattuck v. American Cement Co., 205 Pa.
197; Dowd v. Crow, 205 Pa. 214.

Cited as to the claim for extras: Sumption v. Rogers,
53 Pa. Superior Ct. 109.

*Ira Jewell Williams,* with him *J. Quincy Hunsicker,*
for appellee.

OPINION BY HENDERSON, J., October 11, 1915:

The plaintiffs' oral evidence relating to the first re-
lease of liens was properly submitted to the jury as is
conceded by the learned counsel for the appellant.   The
testimony offered is treated in their argument as evi-
dence to vary the terms of a written instrument and as
there were two witnesses in support of the contem-
poraneous oral agreement no complaint is made that the
court permitted the jury to inquire and determine wheth-

er such an agreement was entered into. It is urged however that the second releases were not supported by the testimony of at least two witnesses or one witness and corroborating circumstances and that the evidence relating to the circumstances under which they were obtained should have been excluded. In passing on the correctness of the court's decision it is necessary to take into consideration the whole transaction. The owner first prepared a "blanket release" to which he undertook to procure the signatures of all of the lien creditors. His object in so doing was to clear the property in order that he might place a mortgage thereon. The document shows that it was intended to be signed by all the creditors and the owner stated the use to be made thereof. The jury has found on admittedly competent evidence that the signature of the plaintiffs to this instrument was obtained on the agreement that the paper should not become effective unless all of the lien creditors became signers thereto. It is also unquestioned that it was not signed by all of the creditors. After the plaintiffs' signature had been obtained the owner discovered that the blanket form of release was not satisfactory and that it would be necessary to have a separate release for each house and lot to enable him to carry out the project which he had in view objection being made by the prospective lender of money to the general release covering all of the property. Thereupon a separate release for each house and lot was prepared to be signed by the several lien creditors. No use of the first release had been made by the owner, and the second releases were clearly substitutes for the first. They were to be used for the purpose in contemplation when the first was signed and it is not suggested that any new consideration or inducement was presented to the signing creditors. The whole transaction should be considered as one act, therefore, so far as the release of liens is concerned and what took place at the execution of the first paper has an important bearing on the making of the separate re-

leases.   The same object was in view and the owner's convenience was the only consideration which brought about the change.   The first and second releases were successive steps in the whole plan to effect a loan and are to be construed together as one transaction: Thompson v. McClenachan, 17 S. & R. 110; Kramer v. Dinsmore, 152 Pa. 264.   If the releases were executed by the plaintiffs on the agreement that they were not to become complete and operative until all the lien creditors had signed them they cannot be made available as a defense in the face of the fact that some of the lien creditors never became parties thereto: Warfel v. Frantz, 76 Pa. 88; Whitaker v. Richards, 134 Pa. 191.   It is to be observed, too, that the plaintiffs' objection does not involve an alteration of a written instrument but attacks the validity of the release as a contract.   The proposal is not to alter or contradict but to set aside and destroy because of the failure of the condition under which it was to have life and efficiency.   In such a case the testimony of a single witness covering the point in controversy requires a submission of the question of fact so raised to the jury: Spritzer v. Penna. R. R. Co., 226 Pa. 166; Gordon v. Great Atlantic & Pacific Tea Co., 243 Pa. 330.   If the release was given to be deemed executed only when all the members of a specified class had signed it and the owner used it in a different way and without the existence of the specified condition such use would be a fraud because in violation of the promise made at the time the paper was executed: Davidson v. Young, 167 Pa. 265; Phillips Gas &·Oil Co. v. Pittsburgh Plate Glass Co., 213 Pa. 183; Winters v. Schmitz, 36 Pa. Superior Ct. 496.

At the time the appellant insured the title to the mortgage it had no standing to intervene and defend against the liens.   The 23d Section of the Act of June 4, 1901, P. L. 431, permits any party having a lien against, estate in, or charge upon, a property included in such claim to file his petition for leave to intervene, and the 24th section permits any person having an interest in the property de-

scribed in the claim to intervene as a party defendant by agreement of the parties or by leave of court with the same effect as if he had been originally named as defendant in the claim filed. We think it cannot be successfully contended that the appellant had a lien against, estate in, or charge upon the property or interest therein at the time the insurance was taken. What it claims to have is an equity arising out of the delivery of the releases to the owner and the action of the appellant by reason of such releases. This is not such an interest as the statute contemplates and does not give the appellant standing to contest the claim by reason of its insurance of the mortgages: Pagnacco v. Faber, 224 Pa. 18. If it be contended that it had standing to offer the defense as owner in fee the proposition is confronted by the fact that the lien was filed on February 25, 1910, and title was not taken by the appellant until Dec. 31, 1910. The entry of the lien was notice to purchasers and encumbrancers of the plaintiffs' claim: Harbach v. Kurth, 131 Pa. 177; Kreusler v. Glukoff Co., 223 Pa. 174. The assertion of a lien was inconsistent with the release proposed to be set up and the intending purchaser was bound to make inquiry in regard to the claim and release. It cannot be said that the appellant was an innocent purchaser the lien being on record. It had actual or constructive notice that the plaintiffs claimed to have a charge on the property: Hill v. Epley, 31 Pa. 331. Under such circumstances an estoppel could not be set up because of the knowledge or means of knowledge which the purchaser had.

Under the evidence there was a question of fact as to the delivery of the "extras" to the Tulpehocken street houses and this question was submitted to the jury by the court with appropriate instructions. It was not an answer to the claim that part of that material was used in other houses. A delivery for a particular house entitles the materialman to a lien although the material

187, (1915]           Opinion of the Court.

may have been actually used in another building: B. F. Lee Co. v. Sherman, 43 Pa. Superior Ct. 557.

There was no appropriation of the payments by the owner and the uncontradicted evidence is that the claimant's books were kept without any reference to liens. The jury found in favor of the plaintiffs on this subject and we are not persuaded that any error was committed by the court on that branch of the case. A consideration of all of the assignments of error and the arguments relating thereto leads us to the conclusion that there was not any error calling for a reversal.

The judgment is affirmed.